[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

————————————————

No. 99-10411

————————————————

D. C. Docket No. 97-06203-CV-WDF
Bkcy. Docket No. 96-22043 BKC-RB

**FILED**
**U.S. COURT OF APPEALS**
**ELEVENTH CIRCUIT**
**JUNE 12, 2001**
**THOMAS K. KAHN**
**CLERK**

IN RE:      ALAN L. GOLDENBERG,                                    Debtor.


SHIRLEY SAWCZAK,

Plaintiff-Appellee-
Cross-Appellant,

versus

ALAN L. GOLDENBERG,

Defendant-Appellant-
Cross-Appellee.


————————————————

Appeals from the United States District Court
for the Southern District of Florida

————————————————
**(June 12, 2001)**

Before ANDERSON, Chief Judge, CARNES and RONEY, Circuit Judges.

ANDERSON, Chief Judge:

Upon the Florida Supreme Court's review of the question we certified in this

case, we revisit our decision in <u>In re Goldenberg</u>, 218 F.3d 1264, 1266 (11th Cir. 2000).

In so doing, we need only briefly restate the facts. Shirley Sawczak sued Dr. Alan Goldenberg in Broward County, Florida, for negligently performing gall bladder surgery on her. Dr. Goldenberg did not carry malpractice insurance. On the day the jury was to begin deliberations in the medical malpractice suit, Dr. Goldenberg filed a petition for relief under Chapter 7 of the Bankruptcy Code. Later that day, Sawczak filed an emergency motion for relief from the bankruptcy's automatic stay, and the bankruptcy court granted Sawcazk's motion so that the malpractice trial could be completed. The jury returned a verdict in Sawczak's favor, awarding her $4,000,629 in damages.

Thereafter, Dr. Goldenberg filed bankruptcy schedules listing $3,791,119 in assets, of which he claimed $3,751,678 as exempt. Of that amount, the only issue remaining before us[1] involves the exempt status of seven annuity contracts, with a claimed aggregate value of $355,894. The annuities are single premium annuities; meaning, Dr. Goldenberg paid a single premium which will accrue interest until

---

[1]This appeal also initially involved the exempt status of $2,546,319 in individual retirement accounts ("IRAs"). In our previous opinion, in addition to certifying the annuity issue discussed herein, we also affirmed the holdings of both the district court and the bankruptcy court upholding the exempt status of Dr. Goldenberg's $2,546,319 in IRAs. <u>See</u> <u>In re Goldenberg</u>, 218 F.3d at 1266. That affirmance is not affected by the instant decision reversing on the issue of $355,894 in annuity contracts.

the maturity date of the annuity. At the maturity date, sums certain become payable to the annuitant or his survivors under various settlement options set out in the contracts. Prior to maturity, the annuity contracts may be "surrendered" in exchange for a lump sum of money defined by the contracts as either the "surrender value" or "net surrender value." According to Sawczak, no maturity dates have yet arrived.

Before the bankruptcy court, Sawczak objected to Dr. Goldenberg's claim that the annuity contracts were exempt under Fla. Stat. Ann. § 222.14[2]. She argued that § 222.14 did not apply because the contracts were not mature and thus did not constitute "proceeds of annuity contracts" under the statute. The bankruptcy court disagreed and overruled her objection, concluding that Dr. Goldenberg's annuity contracts were exempt from legal process under Fla. Stat. Ann. § 222.14.

Sawczak appealed the bankruptcy court's decision to the district court for the

---

[2]Florida Statute Annotated § 222.14 states:
The cash surrender values of life insurance policies issued upon the lives of citizens or residents of the state and the proceeds of annuity contracts issued to citizens or residents of the state, upon whatever form, shall not in any case be liable to attachment, garnishment or legal process in favor of any creditor of the person whose life is so insured or of any creditor of the person who is the beneficiary of such annuity contract, unless the insurance policy or annuity contract was effected for the benefit of such creditor.

Southern District of Florida. The district court reversed the bankruptcy court, holding that "Dr. Goldenberg did not have annuity contracts until the funds in the annuity account reached maturity." Thus, the district court concluded that Dr. Goldenberg was not entitled to an exemption as to the $355,894 and that, as a judgment creditor, Sawczak could attempt to reach those assets by process.

Dr. Goldenberg appealed, and we expressed no opinion regarding whether annuity contracts fell under Fla. Stat. § 222.14. Instead, we concluded that this case involved an unanswered question of state law that was determinative of this appeal. Finding no clear, controlling precedent in the decisions of the Supreme Court of Florida, we certified the following question of law to the Supreme Court of Florida for instruction: "Are the cash surrender values of Dr. Goldenberg's 'annuity contracts' exempt from legal process under Fla. Stat. Ann. § 222.14 (West. 1998)?"

In a unanimous decision, the Florida Supreme Court answered our question in the affirmative. See Goldenberg v. Sawczak, __ So.2d __, 2001 WL 469074, *1 (Fla. 2001). The court held that "the proceeds of an annuity contract where there is a surrender penalty are exempt from legal process by virtue of section 222.14." Thus, under Florida law, Dr. Goldenberg's annuity contracts are exempt. It follows from this that the district court erred in concluding that such annuities were

4

not exempt under § 222.14. Accordingly, as to the $355,894 in annuity contracts, we REVERSE the district court's decision, and REMAND for further proceedings consistent with this opinion.